IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

HERMAN TIEMENS, JR.,

    Plaintiff,      No. CIV S-09-0052 FCD EFB P

    vs.

R.L. ANDREASEN, et al.,

    Defendants.     <u>ORDER AND</u>
<u>FINDINGS AND RECOMMENDATIONS</u>

_____/

    Plaintiff is a prisoner proceeding without counsel in a civil rights action brought under 42 U.S.C. § 1983. On July 20, 2010, defendants Andreasen and Khoury moved for summary judgment. Dckt. No. 27; *see* Fed. R. Civ. P. 56. Plaintiff seeks an extension of time to file a "reply" to defendants' reply to his opposition to the motion. Dckt. No. 39. That request is denied. In addition, for the reasons that follow, the undersigned recommends that the motion for summary judgment be granted.

**I. Motion for Extension of Time**

    Plaintiff seeks an extension of time to file a "reply" to the defendants' reply to plaintiff's opposition to their motion for summary judgment (essentially, a sur-reply). Dckt. No. 39. The Federal Rules of Civil Procedure and the Local Rules of this court provide only for the filing of the motion, plaintiff's opposition, and defendant's reply – no provision is made for an additional

1

sur-reply by plaintiff. Plaintiff has not provided the court with good cause to depart from this procedure. Fed. R. Civ. P. 56(c); E.D. Cal. R. 230. Accordingly, the motion for an extension of time will be denied.

**II. Summary Judgment Procedure**

Summary judgment is appropriate when it is demonstrated that there exists "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment avoids unnecessary trials in cases in which the parties do not dispute the facts relevant to the determination of the issues in the case, or in which there is insufficient evidence for a jury to determine those facts in favor of the nonmovant. *Crawford-El v. Britton*, 523 U.S. 574, 600 (1998); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-50 (1986); *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471-72 (9th Cir. 1994). At bottom, a summary judgment motion asks "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Liberty Lobby*, 477 U.S. at 251-52. "When reasonable minds could differ on the material facts at issue, summary judgment is not appropriate." *Nw. Motorcycle Ass'n*, 18 F.3d at 1472.

Under summary judgment practice, the moving party

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting the prior language of Rule 56(c), which was amended in 2007 to implement purely stylistic changes). If the moving party meets its initial responsibility, the opposing party must "set out specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party must demonstrate – through evidence in the form of affidavits

and/or admissible discovery material – a factual dispute that is both material (i.e. it affects the outcome of the claim under the governing law) and genuine (i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party). *Anderson*, 477 U.S. at 248-50; *Matsushita*, 475 U.S. at 586 n.11. Summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 322. Thus, "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323.

In resolving a summary judgment motion, the court examines the pleadings, the discovery and disclosure materials on file, and any affidavits filed by the parties. The evidence of the opposing party is to be believed, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in his or her favor. *Anderson*, 477 U.S. at 255*;* *Matsushita*, 475 U.S. at 587. Nevertheless, it is the opposing party's obligation to produce a factual predicate from which a favorable inference may be drawn. *See Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted).

On August 7, 2009, the court informed plaintiff of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. *See Rand v. Rowland*, 154 F.3d 952, 955-60 (9th Cir. 1998) (en banc), *cert. denied*, 527 U.S. 1035 (1999) (holding that either the district court or the moving party must inform a pro se prisoner of the requirements of Rule 56), and *Klingele v. Eikenberry*, 849 F.2d 409, 411-12 (9th Cir. 1988).

////

## III. Background

The following facts are undisputed unless otherwise noted:

At all times relevant to this action, plaintiff was incarcerated at the California Medical Facility ("CMF"). Dckt. No. 6, Am. Compl.; Defs.' Stmt. of Undisp. Facts ("Defs.' SUF") 1; Pl.'s "Statement of Disputed Facts" ("Pl.'s SDF") 1. In 1996, plaintiff suffered a major heart attack that required open heart surgery. Defs.' SUF 1; Pl.'s SDF 4. In 2006, plaintiff received angiograms at Queen of the Valley Hospital ("QVH") in Napa. Defs.' SUF 2; Pl.'s SDF 5. While being treated at QVH, plaintiff complained that he was suffering side effects from the medication Isosorbide, which he had been taking since 2001 as a preventative against another heart attack. Defs.' SUF 3, 10, 11; Pl.'s SDF 6, 12. Defendants characterize the complained-of side effects as "upset stomach" and "nausea." Defs.' SUF 3; Defs.' Mem. of P. & A. at 13. In his complaint, plaintiff similarly characterized the side effects as "nausea" and becoming "overheated." Am. Compl. at 3. However, in opposing the motion for summary judgment, plaintiff characterizes the side effects as "hives," "bleeding" of ulcers in his esophagus and lower stomach, and "chronic pain." Pl.'s SDF 6, 11. In his communications with prison staff prior to the filing of this suit, plaintiff characterized the side effects as "severe sweating and heating," "severe sour stomach all the time and stomach cramps," being "good and sick," "over heating," coming "unglued," and acid reflux. Am. Compl. at 5, 9, 11, 12, 14.

To address the side effects, medical staff at QVH (according to plaintiff, a Dr. Dassah), told plaintiff to take the medication with ice chips, snacks, and pudding. Pl.'s SDF 3; Defs.' SUF 6. Plaintiff characterizes this advice as a written medical prescription for ice chips, snacks, and pudding, but has not provided the court with a copy of the prescription itself. Pl.'s SDF 6, 7.

According to plaintiff, when he returned to CMF from the hospital, he was examined by a nurse and defendant Andreasen. Pl.'s SDF 7. Plaintiff claims that defendant Andreasen informed him that "they do things differently at CMF" and that he would not order that ice chips, snacks, and pudding be provided to plaintiff with the Isosorbide. *Id.* Plaintiff states that both

4

defendants informed him that they were in charge of "prescribing medical orders" at CMF and, due to budget constraints, they would not order the ice chips, snacks, and pudding for plaintiff. Pl.'s SDF 8. Plaintiff further claims that defendant Andreasen made daily routine check-ups on plaintiff. Pl.'s SDF 11. Defendants somewhat dispute that they were personally involved in plaintiff's care in the manner described by plaintiff. According to defendants, defendant Andreasen has never been plaintiff's primary care physician and never saw plaintiff following plaintiff's administrative appeal regarding the denial of ice chips, snacks, and pudding. Defs.' SUF 8. Defendants do not address plaintiff's claim that defendant Andreasen examined him upon his return to CMF from QVH and made daily check-ups on plaintiff thereafter (prior to the administrative appeal). Defendants further claim that defendant Khoury has never treated plaintiff and that his sole involvement in the case was to deny plaintiff's administrative appeal. Defs.' SUF 9.

It is unclear whether or for how long after his return to CMF from QVH plaintiff suffered side effects from the Isosorbide as a result of the denial of ice chips, snacks, and pudding. In his deposition testimony, plaintiff stated that he suffered those side effects for approximately a month-and-a-half before his primary care physician discontinued the Isosorbide prescription. Defs.' SUF 12; Defs.' Mot. for Summ. J., Ex. B ("Pl.'s Dep.") at 58:3-9. Plaintiff's administrative appeal documents indicate that plaintiff was treated at QVH in mid-August 2006 and that the Isosorbide was discontinued on December 11, 2006 – a period of nearly four months. Am. Compl. at 7, 11. However, in his declaration in support of his opposition to defendants' summary judgment motion, plaintiff declares:

> Up under both defendants' orders I was taking the medication Isosorbide from 2001 to 2006, I did not suffer any more side effects because I went to the CMF canteen and I received quarterly packages of custard pudding and that stopped the side effects, but I had to pay out of pocket expense which I did not have to because at all times relevant to this action I was under the medical care of the California Department of Corrections and Rehabilitation.

Pl.'s Decl. In Supp. of Opp'n to Defs.' Mot. for Summ. J. at ¶ 12; *see also* Pl.'s SDF 12. From

5

that statement, it appears that, once defendants allegedly refused to provide him with ice chips, snacks, and pudding, plaintiff spent his own money to obtain pudding at the canteen and thereby prevented the side effects.  It further appears that the harm plaintiff alleges to have suffered may not be the Isosorbide side effects but rather the out-of-pocket loss he sustained by having to pay for his own pudding.

No physician has ever told plaintiff that taking Isosorbide without ice or a snack caused him to suffer a bleeding ulcer.  Pl.'s Dep. at 58:14-17.  No physician has told plaintiff that he has suffered long-term negative health effects from being deprived of ice chips, snacks, and pudding to consume with the Isosorbide, and plaintiff has not had to receive any medical treatment as a result of the denial of ice chips, snacks, and pudding.  Defs.' SUF 13, 14; Pl.'s Dep. at 58:14-59:24.

Plaintiff filed an administrative appeal of the denial of ice chips, snacks, and pudding as well as a formal request for accommodation seeking those items in September and October of 2006.  Defs.' SUF 4; Pl.'s SDF 10.  In his interview in connection with the appeal, plaintiff stated that he wanted the ice and snack in the afternoon to prevent nausea.  Defs.' SUF 6; Am. Compl. at 13.  Plaintiff told the interviewer that the upset stomach was caused by gastric acid and that various antacids he had been prescribed prevented gastric acid from being produced.  Defs.' SUF 6; Am. Compl. at 13.  Defendant Andreasen, who conducted the review of plaintiff's appeal at the first level, spoke with the CMF pharmacist, who stated that cold water would be unlikely to mitigate plaintiff's upset stomach and could constrict blood vessels, impacting plaintiff's heart condition.  Defs.' SUF 7; Am. Compl. at 13.  The pharmacist further advised that room-temperature water would "most likely mitigate the nausea feelings" experienced by plaintiff.  Defs.' SUF 7; Am. Compl. at 13.  Defendant Andreasen concluded that "there has been no evaluation by your primary care provider establishing the medical necessity for ice or a snack" and accordingly denied the appeal.  Defs.' SUF 7; Am. Compl. at 13.

////

Plaintiff sought review at the second level, which was denied by defendant Khoury. Defs.' SUF 9. After exhausting the appeal at the third and final level, plaintiff filed the instant suit under 42 U.S.C. § 1983.

**IV. Deliberate Indifference Under the Eighth Amendment**

A prison official violates the Eighth Amendment's proscription of cruel and unusual punishment where he or she deprives a prisoner of the minimal civilized measure of life's necessities with a "sufficiently culpable state of mind." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). "An official's deliberate indifference to a substantial risk of serious harm to an inmate – including the deprivation of a serious medical need – violates the Eighth Amendment." *Conn v. City of Reno*, 572 F.3d 1047, 1054-55 (9th Cir. 2009). To succeed on an Eighth Amendment claim predicated on the denial of medical care, a plaintiff must establish that he had a serious medical need and that the defendant's response to that need was deliberately indifferent. *Id.* at 1055, quoting *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006); *see also Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A serious medical need exists if the failure to treat plaintiff's condition could result in further significant injury or the unnecessary and wanton infliction of pain. *Conn*, 572 F.3d at 1055. An officer has been deliberately indifferent if he was actually aware of the plaintiff's serious medical need and did not reasonably respond to the risk. *Id.* at 1056; *Farmer*, 511 U.S. at 828, 844-45.

Neither a defendant's negligence nor a plaintiff's general disagreement with the treatment he received suffices to establish deliberate indifference. *Estelle*, 429 U.S. at 106; *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988); *Jackson v. McIntosh*, 90 F.3d 330, 331 (9th Cir. 1996). Evidence that medical caregivers disagreed as to the need to pursue one course of treatment over another is also insufficient, by itself, to establish deliberate indifference. *Jackson*, 90 F.3d at 332.

Additionally, a plaintiff may not sue a supervisor on the theory that the supervisor is liable for the acts of his or her subordinates. *See Polk County v. Dodson*, 454 U.S. 312, 325

(1981). Rather, a supervisor may be held liable only in his or her individual capacity "'for his own culpable action or inaction in the training, supervision or control of his subordinates.'" *Watkins v. City of Oakland*, 145 F.3d 1087, 1093 (9th Cir. 1998) (quoting *Larez v. City of L.A.*, 946 F.2d 630, 646 (9th Cir. 1991)).

**V. Analysis**

Defendants proffer three reasons why summary judgment should be granted in their favor. First, they contend that their sole involvement in plaintiff's case was to deny his administrative appeal and generally supervise medical care at CMF and such involvement is an insufficient basis for liability under § 1983. Second, defendants argue that their conduct did not rise to the level of a constitutional violation because the evidence does not show that plaintiff suffered a serious medical need and because the evidence shows merely a disagreement among caregivers as to the proper course of treatment rather than deliberate indifference. Third, defendants argue that the are entitled to qualified immunity from plaintiff's suit because a reasonable official could have thought that the denial of ice, snacks, and pudding was lawful in light of established law and the available information. As explained below, the court rejects defendants' argument that their role in denying plaintiff's administrative appeal is an insufficient basis for liability under § 1983. The court finds, however, that plaintiff has failed to raise a triable issue of fact that defendants were deliberately indifferent to his medical needs. Accordingly, summary judgment in defendants' favor is appropriate.

**A. Medical Staff's Denial of a Medical Appeal May Constitute Deliberate Indifference**

As recited above, the parties dispute the defendants' level of involvement in denying plaintiff's request for ice, snacks, and pudding. Defendants claim their sole involvement was in denying plaintiff's administrative appeal and generally supervising medical care at CMF while plaintiff claims to have been personally treated by defendants. Even if the court were to find that

8

plaintiff has not raised a triable issue of fact that defendants' personally treated him and personally denied him ice, snacks, and pudding, the court concludes that defendants' denial of plaintiff's administrative appeal is sufficient personal involvement on which to premise a § 1983 action against them.

Under section 1983:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. An individual defendant is not liable on a civil rights claim unless the facts establish the defendant's personal involvement in the constitutional deprivation or a causal connection between the defendant's wrongful conduct and the alleged constitutional deprivation. *See Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989); *Johnson v. Duffy*, 588 F.2d 740, 743-44 (9th Cir. 1978). Defendants rely on two Ninth Circuit cases in support of their argument that denial of an administrative appeal is not sufficient personal involvement on which to premise a § 1983 action: *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003) and *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988).

In *Mann*, the Ninth Circuit held that a state's unpublished policy statements establishing a grievance procedure did not create a constitutionally protected liberty interest, presumably in response to a due process claim asserted by the plaintiff. 855 F.2d at 640; *see Sandin v. Connor*, 515 U.S. 472, 484 (1995) ("States may under certain circumstances create liberty interests which are protected by the Due Process Clause."). While, under *Mann*, an inmate may lack a due process right to a grievance process, that case does not hold that, once the grievance process has been initiated, an official's conduct in reviewing the grievance will never constitute a violation of a plaintiff's constitutional rights.

Similarly, in *Ramirez*, the court held that "inmates lack a separate constitutional entitlement to a specific grievance procedure" and accordingly rejected the inmates "claimed

loss of a liberty interest in the processing of his appeals," citing *Mann*. 334 F.3d at 860. Again, *Ramirez* merely held that inmates lack a due process right to an administrative appeal process and does not stand for the proposition that an official's conduct in processing an appeal, where an appeal process has been provided, will never violate the constitution. Here, plaintiff does not claim that he was deprived of due process by being denied access to the administrative appeals process. Rather, he claims that, having been made aware of his medical needs by way of his administrative appeal, defendant medical doctors responded in a deliberately indifferent fashion by denying his request for ice, snacks, and pudding. Such a claim was not addressed by, and accordingly is not barred by, *Mann* or *Ramirez*.[1]

In addition, defendants were both personally involved in plaintiff's case by denying his appeal. That undisputed involvement establishes that defendants were not merely supervisors in this case. Accordingly, summary judgment in favor of defendants is not appropriate on the grounds that defendants were not sufficiently involved in the claimed constitutional deprivation to warrant imposition of liability under § 1983.

### B. Plaintiff Has Failed to Raise a Triable Issue that Defendants Were Deliberately Indifferent

In arguing that plaintiff has not established a triable issue of material fact that defendants were deliberately indifferent to his serious medical need, defendants first argue that the undisputed facts show that plaintiff suffered only nausea, which is not a serious medical need. *See Doty v. County of Lassen*, 37 F.3d 540, 546 (9th Cir. 1994) (holding that "nausea, shakes, headache and depressed appetite due to unresolved family situational stress" did not present a

---

[1] The court recognizes that district courts have not taken a uniform view as to whether *Ramirez* and *Mann* preclude imposition of § 1983 liability on defendants whose sole involvement was to deny a plaintiff's administrative appeal. *E.g., compare Hannon v. Kramer*, No. 1:05-cv-0622-REC-SMS-P, 2006 U.S. Dist. LEXIS 32399 (E.D. Cal. May 23, 2006) *with Herrera v. Hall*, No. 1:08-cv-01882-LJO-SKO PC, 2010 U.S. Dist. LEXIS 70611 (E.D. Cal. July 14, 2010). The court has considered these cases, among others, in reaching its conclusion that *Ramirez* and *Mann* do not preclude plaintiff's Eighth Amendment claim against defendants for the reasons provided above.

serious medical need). However, the evidence before the court is in dispute as to the type and severity of side effects suffered by plaintiff. As summarized above, plaintiff described those symptoms in his administrative appeal as ranging from "over heating" to "severe sour stomach and stomach cramps" and acid reflux. Defendants have not provided the court with authority that such conditions do not amount to a serious medical need. Moreover, in *Doty*, the court relied in part on the fact that the plaintiff's nausea and other symptoms were caused solely by the stress of being separated from his family due to confinement in finding that the symptoms did not present a serious medical need. *Id.* ("A "serious" medical need requires an ailment of a greater magnitude or with a cause separate from confinement.") Here, however, plaintiff alleges that his symptoms were caused by ingesting Isosorbide without ice, snacks, and pudding, not simply from being confined. Thus, the court cannot conclude based on the evidence and argument provided that there is no triable issue as to whether plaintiff had a serious medical need.

Next, defendants argue that the undisputed facts do not show that they were deliberately indifferent in response to plaintiff's condition, but instead show simply a disagreement between QVH medical staff and CMF medical staff as to the best course of treatment for the side effects plaintiff suffered from the Isosorbide. The court agrees. "[P]rison officials who act reasonably cannot be found liable under the Cruel and Unusual Punishments Clause." *Farmer*, 511 U.S. at 845 (1994). Here, it is undisputed that defendant Andreasen responded to plaintiff's complaint of medication side effects by taking several steps. First, defendant Andreasen reviewed plaintiff's interview, in which plaintiff had said that he took antacids that prevented acid reflux. Am. Compl. at 13. Second, defendant Andreasen discussed the matter with the CMF pharmacist and was told that room-temperature water would be more likely to mitigate the side effects than ice water. *Id.* Third, defendant Andreasen noted that ice water could impact plaintiff's heart condition by constricting his blood vessels. Fourth, defendant Andreasen confirmed that plaintiff's primary care physician had not noted a need for ice or a snack. *Id.* At most,

plaintiff's evidence shows that defendant Andreasen disagreed with QVH staff and plaintiff as to the most effective way to treat the Isosorbide side effects. Such facts do not establish defendant Andreasen's deliberate indifference. *Jackson*, 90 F.3d at 331-32. Rather, the undisputed facts show that defendant Andreasen reasonably responded to plaintiff's complaint by confirming that plaintiff's symptoms were being addressed.

Plaintiff's opposition papers are nearly devoid of mention of defendant Khoury. Plaintiff only states, in his "Statement of Disputed Facts" and supporting declaration that both defendants told him they were going to discontinue plaintiff's ice, snacks and pudding due to budgetary constraints. Pl.'s SDF 8; Pl.'s Decl. at ¶ 7. Because the undisputed facts and evidence show that plaintiff's primary care physician had not ordered ice, snacks, and pudding but rather that CMF medical staff were reasonably addressing plaintiff's stomach symptoms through antacid medication, plaintiff has failed to raise a triable issue that defendant Khoury acted with deliberate indifference when faced with plaintiff's complaints of Isosorbide side effects.[2]

**VI. Order and Recommendation**

Because the Federal Rules of Civil Procedure and the Local Rules of this court do not provide for additional briefing beyond defendants' reply to plaintiff's opposition for summary judgment, plaintiff's request for an extension of time to file a "reply" to defendants' reply is DENIED.

////

////

---

[2] While not argued by defendants, the court notes that, if, as plaintiff's declaration and statement of disputed facts indicate, plaintiff's sole claim of harm as the result of defendant's conduct is that he had to pay for his own pudding to combat the Isosorbide side effects, such facts also do not establish a claim of deliberate indifference. "If a prisoner is able to pay for medical care, requiring such payment is not deliberate indifference to serious medical needs." *Reynolds v. Wagner*, 128 F.3d 166, 173-74 (3d Cir. 1997); *see also Blaise v. McKinney*, 187 F.3d 640, 1999 U.S. App. LEXIS 15669, *1 (8th Cir. 1999); *White v. Corr. Med. Servs.*, 94 Fed. Appx. 262, 264 (6th Cir. 2004); *Davis v. Outlaw*, No. 2:08cv209-JLH-BD, 2009 U.S. Dist. LEXIS 99819, *4-8 (E.D. Ark. May 28, 2009) (collecting cases).

1 Further, because plaintiff has failed to raise a triable issue that defendants responded to his medical condition with deliberate indifference, it is RECOMMENDED that defendants' motion for summary judgment be GRANTED.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

Dated: February 16, 2011.

/s/ Edmund F. Brennan
EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE